UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**CLOSED CIVIL CASE**

Case No. 07-20619-CIV-GRAHAM/TORRES

ELLER MEDIA COMPANY n/k/a
CLEAR CHANNEL OUTDOOR, INC.,

    Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA and
AIG TECHNICAL SERVICES INC.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant National Union Fire Insurance Company's Motion for Final Summary Judgment [D.E. 55] and Plaintiff Eller Media Company's Motion for Partial Summary Judgment [D.E. 52].

**THE COURT** has considered the Motions, the pertinent portions of the record, and is otherwise fully advised in the premises.

### I.  BACKGROUND

Plaintiff Eller Media Company n/k/a Clear Channel Outdoor, Inc. ("Eller") initiated the instant action by filing a three (3) count Complaint [D.E. 1] in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County seeking damages related to an alleged breach of contract against its liability insurers, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and AIG Technical Services, Inc. ("AIG"). The action was later removed to this Court by Defendont National Union [D.E. 1, 4].

The undisputed facts that gave rise to the instant action are as follows: On or about October 12, 1998, a minor, Jorge Luis Cabrera, was electrocuted near a bus shelter. It was alleged that Eller was criminally liable for the minor's death as Eller performed the electrical installation of the bus shelter. Eller defended itself in the criminal proceedings and expended significant funds on that defense, including monies for the retention of experts and the development of certain defense strategies. The criminal matter concluded in April of 2001.

On October 20, 1998, the family of the minor decedent brought a civil action for wrongful death against Eller. Eller's civil defense was initially provided by its primary insurer, Reliance Insurance Company until September 14, 2001, when the policy limits were exhausted and the civil defense was undertaken by National Union pursuant to the terms of a Commercial Umbrella Policy ("Policy"). Plaintiff alleges that National Union utilized the work product generated by Eller in its criminal defense for Eller's civil defense and refused to pay for that product in violation of National Union's obligations under the Policy. Eller has sued National Union for Breach of Contract, and alternatively for Unjust Enrichment/Quantum Meruit.

Both Parties have moved for Summary Judgment. Defendant National Union seeks summary judgment on all three counts of Plaintiff's Complaint asserting that there are no genuine issues of material fact in dispute and that Defendant is entitled to judgment as a matter of

law. Plaintiff has filed an Opposition to the Defendant's Motion for Summary Judgment [D.E. 82] and Defendant has filed a Reply [D.E. 88]. Plaintiff seeks partial summary judgment on coverage liability or, alternatively, liability under theories of unjust enrichment or quantum meruit [D.E. 52]. Defendant has filed an Opposition to Plaintiff's Motion [D.E. 83] and Plaintiff has filed a Reply [D.E. 91].

## II. LAW & DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R.Civ.P. 56 (c). The moving party has the burden of production. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). When the moving party has met this burden by offering sufficient evidence to support the motion, the party opposing must then respond by attempting to establish the existence of a genuine issue of material fact. See Adickes, 398 U.S. at 160.

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the Court must decide which

issues are material. A material fact is one that might affect the outcome of the case. See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id.

The Court must also determine whether the dispute about a material fact is indeed genuine. In other words, is the "evidence ... such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Marine Coatings of Alabama, Inc. v. United States, 932 F.2d 1370, 1375 (11th Cir. 1991) (dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party). Finally, a party cannot defeat a motion for summary judgment by resting on the conclusory allegations in the pleadings. See Fed. R. Civ. P. 56(e); Anderson, 47 U.S. at 248.

In this case, both Parties have sought summary judgment and generally agree to the pertinent facts underlying this matter. Thus, each Party bears the burden on their respective motions of demonstrating that they are entitled to summary judgment as a matter of law.

### B. Breach of Contract

Defendant National Union first asserts that it is entitled to summary judgment on Count I of Plaintiff's Complaint, Breach of Contract, as National Union fulfilled its duties under the insurance

policy at issue. More specifically, National Union asserts that it is not obligated to pay for Eller's criminal work product that National Union used in the civil action, as the Policy: 1) did not require National Union to provide a defense in the criminal proceedings; 2) did not require National Union to provide a defense in the civil action until the applicable limits of the underlying primary policy had been exhausted; and, 3) did not require National Union to pay for expenses incurred prior to the time that National Union assumed the defense in the civil suit. See, [D.E. 57].

In response, Eller emphatically asserts that pursuant to the Policy, National Union is required to pay for the costs associated with the defense in the civil action, including the criminal work product utilized therein. Eller maintains that it is not seeking to be reimbursed for its criminal defense costs, rather, Eller states that it "...is only seeking recovery from National Union because it chose to use Eller's Work Product after it took over Eller's defense." See, [D.E. 82 at 5]. Eller further argues that whether National Union is an excess carrier is irrelevant as Eller has not alleged that National Union had a "drop down" duty to defend Eller. Id.

In addition, Eller has moved for partial summary judgment on the Breach of Contract claim based upon two provisions contained in the Policy; 1) National Union's duty to defend, and 2) National Union's obligation to pay for expenses incurred at National Union's request once it assumed the defense of the civil suit. See, [D.E. 52-1 at 11]. The Court will examine each of these provisions, in turn.

1) Insurer's Duty to Defend

The Commercial Umbrella Policy issued by National Union on behalf of Eller provides, in relevant part,

> [National Union] shall have the right and <u>duty to defend</u> any claim or suit seeking damages covered by the terms and conditions of this policy when:
>
> 1.  The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the insured have been exhausted by payment of claims to which this policy applies...

(emphasis added). <u>See,</u> [D.E. 52-2 at 11].

Under Florida law, an insurer's duty to defend arises solely from the language of the insurance contract. <u>Carousel Concessions, Inc., v. Florida Ins. Guar. Ass'n</u>, 483 So.2d 513, 516 (3rd DCA Fla. 1986).(citation omitted). It is clear from the case law that if an insurer fails to provide an adequate defense, it breaches its contractual duty and may be held liable for all damages naturally flowing from the breach. <u>Id.</u> In addition, if an insurer breaches its duty to defend or unjustifiably refuses to defend its insured, it forfeits control of the suit to the insured and may be held liable to its insured for costs incurred in providing its own defense. <u>Id.</u> 517-18.

Preliminarily, the Court notes that Eller does not contend that National Union failed to defend Eller in the civil matter or that National Union provided a negligent defense, but instead asserts that National Union didn't pay for a portion of the "expenses" incurred in

that defense. Indeed, by all accounts, National Union did provide a defense for Eller in the civil matter and paid, at least, some expenses associated with that defense. See, [D.E. 82 at 6-7]. In Florida, the case law makes clear that an insurer satisfies its duty to defend when it <u>provides an adequate defense</u> to its insured. <u>Travelers Indem. Co., of Illinois v. Royal Oak Enterprises</u>, 344 F. Supp.2d 1358 (M.D. Fla. 2004)(emphasis added)(citing <u>Carousel Concessions, Inc., v. Florida Ins. Guar. Ass'n</u>, 483 So.2d 513, 516). Thus, as there has been no evidence presented to support a finding that National Union failed to provide an <u>adequate defense</u>, Eller clearly is unable to prevail on a breach of contract claim for National Union's refusal to provide a defense under the "duty to defend" provision.

Nevertheless, the Court recognizes that a claim for breach of duty to defend may also be predicated upon a failure to pay for the costs associated with the defense. <u>Id.</u>(evaluating insured's claims for breach of contract against excess carrier for, among other things, failing to pay costs of defense). In this regard, Eller argues that once National Union assumed Eller's defense and used Eller's work product from the previous criminal case that it should have paid for that work product, "...the same as if any other item of defense cost was purchased from a third party..." pursuant to its "...duty to defend." [D.E. 82 at 6]. Eller maintains that National Union's failure to do so constitutes a breach of the Policy.

National Union counters this argument by asserting that under the

clear language of the Policy that National Union only had a duty to provide a defense on the civil action once Eller's primary insurer tendered its policy limits in September of 2001, and thus National Union is not liable for litigation expenses incurred prior to that time. See, [D.E. 57 at 6, D.E. 83 at 8]. In support of this position, National Union cites to cases that hold that an excess carrier has no duty to defend prior to the exhaustion of the primary insurer's limits. See, [D.E. 83 at 7-8, D.E. 57 at 6].(citing International Bankers Ins. Co. v. Anrone, 552 So. 2d 908, 911 (Fla. 1989); City of Oxnard v. Twin City Fire Ins. Co., 37 Cal App. 4th 1072 (2d Dist. Cal. 1995); Terra-Adi Intern'l. Dadeland, LLC. v. Zurich Ins. Co., 2007 WL 675971 *4 (S.D. Fla. 2007)).

Eller attempts to distinguish the cases cited by National Union by arguing that those cases did not involve situations where "...an insurance company uses [w]ork [p]roduct paid for by the insured, and then refuses payment for that use."[D.E. 82 at 11]. According to Eller, it does not matter that Eller incurred the expenses during the criminal matter, but rather the important issue is that National Union incurred the civil expenses after September 2001, when it used the work product from the criminal matter in the civil action. See, [D.E. 82 at 6].

Thus, the Parties seemingly are arguing different points, which may explain Eller's persistence that National Union's arguments are irrelevant, as Eller had no obligation under the Policy to provide National Union with any of its work product and that therefore

National Union must pay Eller for that product pursuant to the Policy. The fallacy of Eller's argument, however, is that its claim that it should be compensated by National Union for the use of its product in the civil matter does not arise from a breach of duty to defend under the excess carrier Policy. Rather, under this theory, Eller is seeking to be compensated not as an insured, but as a quasi-third party vendor, who claims that it is entitled to be paid for its work. If such a vendor sought payment from National Union, clearly its claim would not arise under the duty to defend provision in the Policy, as the Policy does not guarantee payment to third party vendors, but rather provides coverage for an insured who has incurred expenses in the covered action. Eller is utterly unable to claim that it incurred expenses in the civil action for which National Union refused to pay, and thus its claims in this factual setting do not arise under the Policy and National Union has not breached the Policy in this respect.

Parenthetically, the Court notes that Eller's inability to make this claim also highlights another deficit in Eller's claim for breach of contract under the Policy; its inability to demonstrate any damages from National Union's alleged breach. See e.g., <u>Employers Ins. Co. Of Wausau v. National Union Fire Ins. Co.</u>, 2008 WL 1777807 *9-10 (M.D. Fla. April 18, 2008)(citing various cases for holding that if insurance company breaches its contractual duty to defend, insured is entitled to damages that flow from breach, including attorney's fees and costs incurred in defending the underlying action). More specifically, in the Amended Complaint, Eller alleges that it has

suffered liquidated damages in excess of $3,000,000.00 due to National Union's "... failure to reimburse ELLER for any of Eller's Work Product" [D.E. 15 at 5]. However, as discussed above, Eller has not offered any evidence to show that it incurred financial damages because National Union allegedly breached its duty to defend under the Policy. Rather, even if National Union had forgone the use of Eller's work product and chosen to "start from scratch" as suggested by Eller, Eller's expenses related to the criminal work product, with the exception of attorney's fees for prosecuting the instant action, would be the same and Eller would not have recouped any of the criminal expenses for the creation of that work product, in any event. Thus, Eller has not demonstrated that it has suffered any damages as a result of the alleged breach of the Policy.

2)  <u>Expenses incurred at National Union's Request</u>

Eller also argues that National Union was obligated under the Policy to reimburse Eller for defense expenses incurred at National Union's request. The relevant Policy language on this point provides,

> II. Defense
> ...
> B. When we assume the defense of any claim or suit
> ...
>
>> 2.  We will pay the following
>> ...
>>
>>> f.  the insured's expenses incurred at our request.

See, D.E. 52-2 at 12. Thus, according to Eller, as National Union's use of the work product from the criminal matter was the "constructive

equivalent" of a request that Eller incur expenses, National Union must pay for those expenses [D.E. 82 at 9][D.E. 52].

In support of this contention, Eller relies upon L.S.S. Leasing Corp., v. U.S., 695 F.2d 1359 (Fed. Cir. 1982), wherein a United States Claims Court found that the Government was contractually liable to a leasing company for the overtime usage of a building that it lease from the company. In so doing, the court rejected the Government's argument that it was not liable for the overtime usage costs as it had not "requested" those services as required by the leasing contract. Id. at 1365. The court found that the Government's interpretation of the "requested by" language to be unreasonable, as the phrase was intended to protect the Government from frivolous claims for payment for services that it did not want, and to protect the leasing company from facing liability for breach of contract for failure to provide service without the requisite notice. Id.

However, the Plaintiff's reliance on this case is misplaced. The Plaintiff focuses on the words "our request" in the Policy to argue that National Union requested the work product and thus should be subject to paying for the expenses related to that product. The focus, however, for purposes of resolving this matter, is broader than the words "our request" but instead must also include the words "...insured's expenses incurred at our request". Under Florida law, insurance contracts are construed according to their plain meaning." Garcia v. Federal Ins. Co., 473 F.3d 1131, 1135 (11th Cir. 2006)(citing Taurus Holdings, Inc. v. United States Fidelity &

Guaranty Co., 913 So.2d 528 (Fla.2005). The Policy unambiguously requires that the insured <u>incurs</u> expenses at the insurer's request. The Plaintiff has absolutely failed to demonstrate that the expenses <u>incurred</u> by Eller for the criminal work product were at the request of National Union. In this regard, <u>LSS Leasing</u> is factually distinct from this case as the overtime charges that were <u>incurred</u> in that case, were due to the Government's usage of certain utilities and the need for additional staff, which would not have even arisen had it not been for the Government's tacit request. In the case at bar, whether National Union had requested the work product or not, the Plaintiff still would have incurred the expenses associated with that work, in defense of the criminal action. Thus, it cannot be said that the work product expenses for the criminal matter were <u>incurred</u> at National Union's request.

Further, as to Eller's claim that National Union "constructively requested" Eller to incur the expenses, the Court finds this statement illogical, as again the expenses at issue were not incurred by any request made by National Union, whether actual or constructive. Finally, as pointed out by National Union, assuming <u>arguendo</u> that Eller incurred certain expenses due to a constructive request made regarding the civil action, it appears that said request would have come from Reliance, Eller's primary insurer, and not National Union. See, [D.E. 88 at 6-7].

C. **Unjust Enrichment**

Plaintiff also seeks to be compensated under Count II, for a

claim of unjust enrichment. In response, National Union argues that this equitable remedy is unavailable where a written policy governs the terms of the agreement between the parties. However, although this argument is applicable to claims that actually arise under the Policy, as discussed above, the claim raised by Eller, although couched as a breach of Policy claim, is more akin to a third-party vendor seeking compensation for its work and not that of an insured seeking coverage under the Policy. See, Miles v. Tennessee River Pulp and Paper, Co., 862 F.2d 1525 (11th Cir. 1989)(stating party cannot recover under an implied contract theory where an enforceable express contract exists between the parties regarding the same subject matter). Eller, itself, argues this point when it asserts that the contract at issue, or in this case the Policy, does not concern the same subject matter as the damages claimed in the lawsuit. See [D.E. 82 at 13]. The Court concurs; Eller's claims do not arise out of the Policy at issue and thus, the Court will examine Plaintiff's equitable claims.

Under Florida law, to prove a claim for unjust enrichment, a plaintiff must establish facts that demonstrate: (1) that a benefit was conferred upon and flowed to the defendant; (2) that the defendant either requested the benefit or knowingly and voluntarily accepted it; and, (3) that under the circumstances, it would be inequitable for the defendant to retain the benefit without paying the value thereof. W.R. Townsend Contracting, Inc., v. Jensen Civil Constr. Inc., 728 So.2d 297, 303 (Fla. Dist. Ct. App. 1999).

In this case, assuming <u>arguendo</u> that the first two elements are met for establishing an unjust enrichment claim, the Court finds that Eller's claim fails as under the circumstances, it would <u>not</u> be inequitable for the Defendant to retain the benefit without paying the value thereof. On the contrary, equity suggests that National Union should not be required to pay for the "work product" of Eller that Eller generated in its own criminal defense, which was ultimately used again for the benefit of Eller in its civil defense. Thus, this is not a case where a benefit is conferred upon a party that does not simultaneously confer a benefit on the Plaintiff. <u>See e.g.</u>, 66 AmJur Restitution §13 (2008)(stating ordinarily, restitution is not available under an unjust enrichment theory for a benefit conferred as an incident of a plaintiff's having acted primarily for his or her own benefit). In this case, Eller received the benefit of a competent defense which is not lessened by the fact that National Union had a duty to provide such a defense.

Indeed, even though National Union may have used or relied upon the work product, if Eller's logic is followed, National Union could have started from scratch and expended funds for work that was already completed or, at least, commenced, rather than use Eller's work product. However, if National Union had followed such a course of conduct and refused to utilize or at least review the work that had previously been created in Eller's criminal defense, it is questionable whether National Union would have been acting in the best interest of its insured and/or acting in good faith in the resolution

of it insured's claims.  See, e.g. National Union First Ins. Co. v. Travelers Inc. Co. 214 F.3d 1269, 1274 (11th Cir. 2000)(stating excess insurer owes duty of good faith when resolving claims which requires insurer to act in best interest of insured in performance of its contractual duties).

In its filings, Eller does little to demonstrate how National Union's use of the work product without payment results in an inequitable result.  While it may be fortuitous that National Union was able to utilize some of Eller's previous work without having to pay for that work, that does not render such use inequitable, particularly in light of the fact that the expenses were initially incurred by Eller for the benefit of Eller and used by National Union again for the benefit of Eller.  In this sense, it was in Eller's best interest to tender the work product to National Union in order that Eller could have the best defense presented in the civil case.

In addition, the Court does not find that Eller's argument that National Union was allegedly investigating Eller's claim for reimbursement alters this conclusion.  Eller did not incur additional expenses due to National Union's communications regarding Eller's reimbursement claims.  Eller may not be satisfied with National Union's ultimate decision to not pay Eller for its claimed "reimbursement", but that does not buttress the argument that National Union's use of Eller's work product without payment was inequitable.  Thus, Eller fails on this claim and National Union is entitled to summary judgment on this issue.

### D. Quantum Meruit

Similarly, Eller's argument for quantum meruit fails as well. Under Florida law, an implied-in-fact contract "is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or part from the parties' conduct, not solely from their words." Baycare Health Systems, Inc. v. Medical Savings Ins. Company, 2008 WL 792061 *7 (M.D. Fla. March 28, 2008)(quoting Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc., 695 So.2d 383, 385 (Fla.App. 1997). Courts have found an implied contract or quantum meruit in instances where services were performed under circumstances fairly raising a presumption that the parties understood and intended that compensation was to be paid. Commerce Partnership 8098, Ltd., 695 So. 2d at 386-87. For purposes of the instant action, Eller has failed to show that the parties have entered into an agreement without "sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." Tooltrend, Inc., v. CMT Utensili, SRL, 198 F.3d 802, 806 (11th Cir. 1999). See also, Commerce Partnership 8098, Ltd., v. Equity Contracting Company, Inc., 695 So 2d 383, 386-87 (4th DCA 1997)(discussing differences between quasi contract recovery and contract implied in fact under quantum meruit theory).

On the contrary, the evidence presented indicates that there was never an agreement or understanding that National Union would pay for the criminal work product prior to the use of the same by National Union. In fact, Eller does not even allege that the Parties had any

type of tacit agreement or other understanding regarding National Union's compensation for the use of the criminal work product. In the Affidavit of Hildy Sastre, Esq., submitted by Eller in support of its Motion for Partial Summary Judgment, Mr. Sastre states that he worked for the firm that originally represented Eller in the civil matter prior to September 14, 2001, when National Union assumed Eller's civil defense [D.E. 52-3]. The Affidavit does not indicate that there was any agreement regarding compensation for Eller prior to National Union's use of the criminal work product. In addition, it does not state that Eller anticipated that National Union would compensate Eller for the use of the work product at the time that National Union reviewed the work product. See, e.g., Tooltrend, 498 F.3d, at 806 (stating that a claim of quantum meruit requires that plaintiffs demonstrate an expectation of compensation before they seek compensation).

Given that it was in Eller's interest to have National Union present a cogent defense in the civil matter, the Court cannot find from the record that Eller tendered the work product to National Union under circumstances fairly raising a presumption that the parties understood and intended that compensation was to be paid. In fact, in Opposition to Eller's Motion for Summary Judgment, National Union has submitted documents which include a letter indicating that National Union specifically stated that National Union would pay expenses incurred after September of 2001, when it assumed Eller's defense. See, [D.E. 83 at 18]. In its Reply, Eller points to a subsequent

-17-

letter that Eller asserts demonstrates that National Union contemplated reimbursement to Eller for its criminal work product. See, [D.E. 91-2]. However, the Court does not find that National Union's discussion of any reimbursement to Eller after National Union utilized the criminal work product is sufficient for a fact finder to conclude that there was a contract in fact between the Parties for such payment. The Court notes that Eller's position is not that there is a genuine issue of material fact on this issue, but rather that the facts support a finding that Eller is due to prevail on its quantum meruit claim, as after National Union was allowed to review the work product, Eller requested payment for that product which indicates that there was an agreement for such payment between the Parties. However, the evidence in the record simply does not support such a finding, and in fact, supports the opposite conclusion, that there was never an agreement, explicit or implied that National Union would compensate Eller for the criminal work product. Accordingly, the Court finds that Eller is unable to prevail on a claim for quantum meruit, and that National Union is entitled to judgment on this claim, as well.

## IV. CONCLUSION

Accordingly, based on the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiff Eller Media Company's Motion for Partial Summary Judgment [D.E. 52] is **DENIED**. It is further

**ORDERED AND ADJUDGED** that Defendant National Union Fire Insurance Company's Motion for Final Summary Judgment [D.E. 55] is **GRANTED**. It

is further

**ORDERED AND ADJUDGED** that this case is **DISMISSED**, the matter is closed and all pending motions are **DENIED as MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of September, 2008.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record